UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EXPERTS, LLC, a Michigan Limited
Liability Company,

       Plaintiff,

                                     Case No. 13-cv-12550
                                     HON. GERSHWIN A. DRAIN

v.

JPMORGAN CHASE & CO., a Delaware
Corporation, *et al*.,

       Defendants.
       _____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [#3] AND CANCELLING AUGUST 27, 2013 HEARING

### I.    INTRODUCTION

On or about May 8, 2013, Plaintiff, Experts, LLC ("Experts"), initiated the present action in the Sixth Judicial Circuit Court for Oakland County, Michigan against Defendants, JPMorgan Chase & Co. ("Chase") and David Wynn ("Wynn"), alleging Tortious Interference with a Business Relationship or Expectancy, Tortious Interference with Contracts, Statutory Conversion under MICH. COMP. LAWS § 600.2919(a), Common Law Conversion, Failure to Exercise Ordinary Care pursuant to MICH. COMP. LAWS 440.4101 *et seq*., Bad Faith under MICH. COMP. LAWS § 440.4101 *et. seq*., Breach of Contract, Unjust Enrichment, and a violation—by Chase alone—of MICH. COMP. LAWS § 440.4805. This matter was removed to this Court on June 11, 2013.

Presently before the Court is Defendants' Motion to Dismiss, also filed on June 11, 2013. This matter is fully briefed and the Court concludes that oral argument will not aid in the

resolution of this matter. Therefore, the present motion will be resolved on the briefs submitted and the August 27, 2013 hearing is cancelled. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Court grants Defendants' Motion to Dismiss.

## II. FACTUAL BACKGROUND

Experts is a Michigan limited liability company, and at the time of the alleged actions had its primary place of business located in Michigan. Experts specializes in helping individuals who seek to have their mortgage loans modified; Experts also deals with debt repair/consolidation. Chase is a Delaware Corporation that conducts some of its business in Michigan. Wynn is a Michigan resident and worked at Chase's Birmingham, Michigan office at the time the alleged actions took place.

In its dealings with Chase, Experts maintained a bank account with Chase, which was governed by the Account Rules and Regulations Agreement. *See* Accountholder Agreement, Defs.' Mot. To Dismiss, Ex. 1. This Agreement provided in relevant part that "[e]ither you or the Bank may close your Account at any time with or without cause." *Id*. at 18. In connection with Experts' bank account, Experts also set up an Automated Clearing House Account ("ACH") that allowed scheduled automatic withdrawals from its customers' bank accounts. The ACH withdrawals were then deposited into Experts' Chase bank account; this was Experts' exclusive method of collecting payments from its customers during the time relevant to this lawsuit. Experts alleges that Chase assured it that it would act with reasonable care and in good faith in ensuring that the transfers from Experts' customers' accounts to its ACH account would be conducted properly and with care. Experts claims that it informed Chase and Wynn—among other Chase representatives—that the cash flow from the ACH was critical to Experts' growth and survival. Experts claims that Chase and Wynn—among other Chase representatives—were

aware that Experts did not have a line of credit and that the company would be put out of business without the continuous receipt of fees set up through the ACH account.

Experts alleges that around late April of 2010, Pasquale Longordo ("Longordo"), principal of Experts and not a party to this suit, could not access Experts' ACH account at Chase. Experts claims that Longordo contacted Wynn, an employee at Chase, to find out why the account was not functional and to inform him of how critical the funds from the ACH account were to Experts' remaining solvent. Experts claims that it contacted Chase repeatedly and was only given misinformation; Wynn is noted to have been among those who gave Experts faulty information. Chase maintains that after Experts' customers reversed large numbers of the ACH transactions, Chase closed Experts' bank account in April of 2010 under its rights pursuant to the Accountholder Agreement. It must be noted that Experts does not allege that Wynn acted outside the scope of his employment. Also absent in the verified complaint is how Wynn's actions differed from the other—unnamed—representatives Experts mentioned in the Complaint. Experts claims that the Defendants' acts cost it at least $3,000,000.00 in lost business revenue.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough

to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*. at 1950.

### B. Defendants' Motion to Dismiss

#### i. Defendant Wynn was Improperly Named as a Defendant

Here, the Court finds that all of the claims against Defendant Wynn are subject to dismissal because the allegations in the Complaint relate to his actions undertaken while acting in his capacity as an agent of Chase. It is well settled in Michigan that an employee cannot be liable for acts attributable to his employer when he is working in his capacity as an employee. "It is a well-accepted rule that where the principal is disclosed and the agent is known to be

4

acting as such, the agent cannot be made personally liable unless he agreed to become personally liable." *Huizenga v. Withey Sheppard Assoc.*, 15 Mich. App. 628, 633; 167 N.W.2d 120 (1969). The only exception to this well established rule is when the agent acts outside the scope of his authority and for his own benefit. *Reed v. Mich. Metro Girl Scout Council*, 201 Mich. App. 10, 13, 506 N.W.2d 231, 233 (1993). A defendant whose actions are motivated by legitimate business decisions cannot be said to have acted with improper motive or to have caused interference. *Dalley v. Dykema Gossett,* 287 Mich. App. 296, 324, 788 N.W.2d 679, 696 (2010).

The only allegations germane to Wynn center on his supposed knowledge of how important the ACH account was to Experts remaining solvent and his conduct in providing misinformation as to why Experts could not access its account. Experts does not discuss any further how Wynn acted wrongfully. Further, there are no allegations in the Complaint that Wynn acted in any capacity other than as an agent for a disclosed principal. Indeed, all of the allegations concerning Wynn demonstrate that he was acting as Chase's agent. *See* Compl., ¶¶ 3, 13, 18 and 20. Experts would have to specify how Wynn acted outside the scope of his employment; however Experts makes no such allegations. Therefore, Experts' allegations against Wynn have no colorable claim because they are largely devoid of detail and do not demonstrate how Wynn acted outside the scope of his employment. Therefore, Wynn is properly dismissed from this cause of action.

      **ii.    Tortious Interference Claims (Counts I and II)**

Experts' tortious interference claims are subject to dismissal because they are time barred under the applicable statute of limitations, as well as fail to state claims pursuant to Rule 12(b)(6). The statute of limitations for a claim of tortious interference with business relationships and tortious interference with contracts is three years. *See DXS, Inc. v. Siemens*

*Medical Sys., Inc.*, 100 F.3d 462, 471 (6th Cir. 1996); *see also James v. Logee*, 150 Mich. App. 35, 38; 388 N.W.2d 294 (1986).  Here, Experts alleges that Chase wrongfully closed its account, which occurred in late April of 2010 when an employee of Experts, Longordo, could not access the Chase account.  However, Experts did not file the instant action until May 8, 2013, or more than three years after the claims arose.  Experts suggests that the statute of limitations did not begin to run until May 27, 2010, when Chase closed the account, and not in April of 2010 when the account was merely frozen.  However, Experts' Complaint confirms that the tortious interference claims accrued in April of 2010 when the account was frozen.  In any event, even if Experts' tortious interference claims were not time barred, they are still subject to dismissal because they do not state viable claims.

Tortious interference with a business relationship contains four elements: (1) there must actually be a genuine business relationship or expectancy, (2) the defendant must know of the relationship or expectancy, (3) the defendant must intentionally interfere with that relationship by inducing or causing a breach, (4) and there must be resulting damage to the plaintiff. *Dalley*, 287 Mich. App. at 323.  Tortious interference with a contract requires that (1) the defendant caused the alleged breach of contract and (2) that the defendant was a third party to the contract. *Dzierwa v. Michigan Oil Co.,* 152 Mich. App. 281, 287, 393 N.W.2d 610, 613 (1986).  A tortious interference action requires a plaintiff to demonstrate that the defendant acted intentionally and improperly.  Courts have defined "improper" as illegal, unethical, or fraudulent. *See Weitting v. McFeeters*, 104 Mich. App. 188, 198; 304 N.W.2d 525 (1981); *Dolenga v. Aetna Cas. & Sur. Co.*, 185 Mich. App. 620, 626; 463 N.W.2d 179 (1990).  "[O]ne who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of

invading the contractual rights or business relationship of another." *Formall, Inc. v. Community Nat'l Bank of Pontiac*, 166 Mich. App. 722, 779; 421 N.W.2d 289 (1988) (internal quotations omitted). Additionally, a plaintiff "must demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Id*. at 779.

Here, Experts claims that Chase's decision to close its bank account was wrongful and caused Experts' clients to end their relationship with Experts. *See* Compl., ¶¶35, 49. However, there are no allegations that the decision to close the account was unlawful or that it was done with malice and unjustified in law for the purpose of invading Experts' contractual rights. Rather, the Accountholder Agreement permits either Chase or Experts to close the account "at any time with or without cause." Further, the allegations are vague with respect to how Chase induced a breach of contract between Experts and its customers. In any event, Chase could not have interfered with the contracts of which it had no knowledge. As a stranger to the contracts between Experts and its customers, Chase could not have intentionally interfered with these relationships. *See Formall*, 166 Mich. App. at 779 (noting that a party must have intentionally intended to interfere with the business relationship).

Experts fails to address any of the arguments presented by Chase as to why Experts' tortious interference claims fail under Rule 12(b)(6) scrutiny. Rather, Experts simply states the elements of its tortious interference claims and then argues that "Experts lost its relationships and expectancies with its current and prospective customers as a direct result of Chase's actions." This is insufficient to state plausible tortious interference claims and these claims are dismissed.

### iii. Conversion Claims (Counts III and IV)

Experts' statutory and common law conversion claims are likewise subject to dismissal. A breach of a contractual obligation cannot support an action in tort absent the "violation of a legal

7

duty separate and distinct from the contractual obligation." *Rinaldo's Construction Corp. v. Michigan Bell Telephone Co*., 454 Mich. 65, 83; 559 N.W.2d 647 (1997). Here, the Accountholder Agreement and the ACH Agreement governed the parties' relationship. As a result, Experts' conversion claims must fail. *See Hart v. Ludwig*, 347 Mich. 559, 564; 79 N.W.2d 895 (1956); *see also Spizizen v. Nat'l City Corp*., No. 09-11713, 2009 WL 3757085, *5 (E.D. Mich. 2009) ("[I]t is clear that [the plaintiffs] may not pursue a claim of conversion against [the] bank, but instead must seek contractual relief from any misappropriation of funds from their National City accounts.") Thus, the Accountholder Agreement governs the parties' relationship and obligations, thus Experts' conversion counts fail as a matter of law.

### iv. Breach of Contract (Count VII)

In order to sufficiently plead a breach of contract claim, a plaintiff must allege (1) a valid, enforceable contract, (2) a breach and (3) resulting damages. *See Brabant v. Michigan Consol. Gas Co.*, 2 Mich. App. 107, 110; 138 N.W.2d 570 (1965); *Haviland v. Metro Life Ins. Co*., 876 F.Supp. 2d 946, 957 (E.D. Mich. 2012). Here, the Accountholder Agreement permitted Chase to close the account for any reason. Thus, Experts' breach of contract claim fails as a matter of law because there are no factual allegations that Chase breached the terms of the parties' agreement.

### v. Unjust Enrichment (Count VIII)

Experts' unjust enrichment claim is likewise subject to dismissal. Claims of unjust enrichment cannot proceed where there is an express contract covering the subject matter; they are only applicable where a contract is implied*. See Fodale v. Waste Management of Michigan, Inc*., 271 Mich. App. 11, 36; 718 N.W.2d 827 (2006) (holding that the existence of an express loan agreement governing a contractual relationship is sufficient ground to defeat a debtor's claim of unjust enrichment.) Here, Experts concedes that express contracts governed the parties'

relationships, specifically, the Accountholder Agreement and the ACH Agreement. *See* Compl., ¶ 86. Therefore, this claim is dismissed.

### vi. MICH. COMP. LAWS § 440.4101 *et seq.* (Count V)

Similar to Experts' tortious interference claims, Experts' claims under MICH. COMP. LAWS § 400.4101 *et seq.* fail because this action was filed more than three years from the date the claims accrued. Michigan Compiled Laws § 400.4111 states that "[a]n action to enforce an obligation, duty or right arising under this article must be commenced within 3 years after the cause of action accrues." Experts' claims arise from Chase's decision to freeze Experts' account preventing Experts from accessing the account in late April of 2010. Since this matter was not filed until May of 2013, this claim is likewise time barred.

### vii. MICH. COMP. LAWS § 440.4805 (Count VI)

Lastly, Experts' claim under § 440.4805 is subject to dismissal because the transactions that occurred here are not covered under this statute, which covers "fund transfers." MICH. COMP. LAWS § 440.4602. A fund transfer is defined as a transaction, "beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order." MICH. COMP. LAWS § 440.4604. Debit transfers are not covered under the statute. *Id.* ("These transactions are not covered by Article 4A" which "is limited to transactions in which the account to be debited by the receiving bank is that of the person in whose name the instruction is given.") The type of transactions at issue herein were debit transfers. Experts alleges that "[t]he ACH account allowed scheduled automatic withdrawals from Experts' customers' bank accounts." Compl., ¶ 9. Therefore, because Experts gave instructions to debit the accounts of its customers, the transactions are "debit transfers" and excluded from the statute. *See* MICH. COMP. LAWS § 440.4604; *Hospicomm, Inc. v. Fleet Bank, N.A.*, 338 F.Supp. 2d 578,

9

586 (E.D. Pa. 2004)("Article 4A specifically excludes so called "debit transfers," where the order to pay is given by the person receiving payment . . . ."). Thus, Plaintiff's claim under § 440.4805 is properly dismissed because the statute does not apply to debit transfers like the transactions at issue herein.

## IV.     CONCLUSION

Accordingly, Defendants' Motion to Dismiss [#3] is GRANTED.  This cause of action is dismissed.

SO ORDERED.

Dated: August 20, 2013                                 s/Gershwin A. Drain
                                                                       GERSHWIN A. DRAIN
                                                                       UNITED STATES DISTRICT JUDGE